**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| **JEFFREY ALAN DAVIS,** | : | **Case No. 2:25-cv-1367** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **District Judge Algenon L. Marbley** |
| **vs.** | : | |
| | : | |
| **TPU SGT. HANCOCK,** *et al.*, | : | **Chief Magistrate Judge Stephanie K.** |
| | : | **Bowman** |
| **Defendants.** | : | |
| | : | |

**REPORT AND RECOMMENDATIONS**

Plaintiff, a prisoner at the Pickaway Correctional Institution ("PCI"), proceeding without the assistance of counsel, has filed a civil rights complaint in this Court. (Doc. 5). By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

This matter is before the Court for a *sua sponte* review of the Complaint to determine whether the Complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.C.S. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

For the following reasons, the Undersigned concludes that Plaintiff's equal

protection claim, stemming from the Rule 3.3 violation described below, may proceed to further development. The Undersigned **RECOMMENDS** that Plaintiff's claim against the Rules Infraction Board ("RIB") **be DENIED with prejudice** and that the remainder of Plaintiff's claims **be DENIED without prejudice**.

## I.      Legal Standard

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fee and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or *repetitive* lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)(1) as part of the statute, which provides in relevant part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> ***
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31. *See also* § 1915A(b). Thus, § 1915(e)

2

requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C §§ 1915A and 1915(e)(2)(B)(ii). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands of the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations' … [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. Apr. 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## II.    Allegations in the Complaint

Plaintiff names as Defendants Transitional Programming Unit ("TPU") Sgt. Hancock, the Rules Infraction Board ("RIB"), RIB Chairman Lt. Norman, and PCI Officer Elliot. Plaintiff states that on August 14, 2025, at 10:30 p.m., Officer Chimney found Plaintiff and another inmate named Garner engaging in an act of consensual sex in a bathroom area, which is an "Institutional rule 3.3 violation." (Doc. 5, at 104). Officer Chimney activated his body camera, even though recording activities in the bathroom area is prohibited.[1] Both Plaintiff and Inmate Garner were written up and sent to TPU (restrictive confinement). And both were supposed to be charged with the same conduct

---

[1]   Plaintiff states that Officer Chimney was relieved of his duties, due to his recording Plaintiff and inmate Garner in the bathroom area.

violation. (Doc. 5-1, at 117).

The following day, according to Plaintiff, Defendant Officer Elliot was working in the TPU and had communication with Inmate Garner. This was in spite of the fact that, at some point prior to the August 14, 2025, incident, Defendant Elliot had filed a "nexis" against inmate Garner. This, according to Plaintiff, prohibited Elliott from having any contact with inmate Garner due to a prior association between the two before inmate Garner's incarceration. (Doc. 5, at 104; Doc. 5-1, at 117, 120, 121-22, 123). Plaintiff states that a few days later, Inmate Garner ended up "changing his story" and filing a PREA (Prison Rape Elimination Act) report against Plaintiff.

Plaintiff continues that, shortly after the contact between Officer Elliott and inmate Garner, Plaintiff received a visit from PREA Coordinator Mr. Merritt. Merritt told Plaintiff that inmate Garner had "changed his testimony" and was now making a PREA rape allegation. (Doc. 5-1, at 122).

Although Plaintiff's Complaint and supporting exhibits are difficult to decipher on this point, it appears that separate hearings were conducted on the PREA rape report before PREA Coordinator Mr. Merritt and Institutional Investigator and on the Rule 3.3 conduct report before RIB Chairman Lt. Norman and TPU Sgt. Hancock. Plaintiff states that the investigation(s) included recordings from the dorm camera and Officer Chimney's body camera. According to Plaintiff, the investigation(s) concluded that the PREA rape report was false but that Plaintiff was guilty of the Rule 3.3 consensual-sex violation. He was sentenced to 15 days in TPU (release date of September 5, 2025).

5

Following an appeal of the RIB verdict to Administrative Assistant Warden Coffee, the decisions finding Plaintiff not guilty of PREA rape report but guilty of Rule 3.3 violation were affirmed. According to Plaintiff, Assistant Warden Coffee found that just because Plaintiff was not guilty of the PREA rape allegation, that did not mean Plaintiff was not guilty of Rule 3.3 violation. Assistant Warden Coffee also stated that inmate Garner's conduct and case had nothing to do with Plaintiff's case, and that he (Coffee) could not discuss Garner's case with Plaintiff. Plaintiff also suggests that his efforts to appeal Assistant Warden Coffee's findings were thwarted.

Plaintiff complains that Defendants Hancock, Norman, and Elliot should not have been allowed to communicate with inmate Garner. And Plaintiff speculates that these Defendants conspired with inmate Garner to persuade Garner to file a PREA (Prison Rape Report) against Plaintiff. Plaintiff also suggests the Defendants' and Garner's conspiracy was racially motivated since Plaintiff is a different race (Black). And Plaintiff also suggests that these incidents prevented (and perhaps were intended to prevent) inmate Garner's transfer to another institution. (Doc. 5-1, at 119, 122, 123).

Plaintiff's Complaint presents a related set of allegations claiming that federally granted medical benefits were not honored by PCI staff. (Doc. 5, at 104). Plaintiff states that this denial-of-benefits claim stems from inmate Garner's false rape allegations, racial discrimination by staff, and conspiracy between certain officers (apparently Defendants Hancock, Norman, and Elliot) and Inmate Garner. Plaintiff explains that, shortly after he was questioned by PREA Coordinator Merritt, Plaintiff was summoned to the TPU

medical area and forced to undress to undergo a physical examination of his genitals that was degrading and defaming—all because of a consensual sex act conduct report that then gave rise to a (false) PREA rape report. (Doc. 5, at 105; *see also* Doc. 5-1, at 109-10). Plaintiff complains that inmate Garner was not subjected to such a physical examination. Plaintiff further complains that because his "Medicare was still active," he should have been provided with a doctor of his choice for that physical examination. Plaintiff states that he wants his Medicare "medical insurance" to be honored at PCI as it was at other institutions. (*Id.*). Plaintiff maintains that, under federal law, an incarcerated person covered by Medicare Part A or Part B health insurance is entitled to choose his own doctor who contracts with Medicare. Plaintiff states that he appealed this alleged violation to the Administrative Assistant Warden Coffey.

Plaintiff asserts that, once the Rule 3.3 Consensual Sex Conduct Report was written, Inmate Garner never should have been permitted to "change his testimony" to make a PREA rape report. Plaintiff also complains that Inmate Garner suffered no consequences from the original Rule 3.3 conduct report or from making a false PREA rape report. (Doc. 5-1, at 129).

At base, Plaintiff contends that he and Inmate Garner were treated differently in connection with the Rule 3.3 consensual-sex rule violation on the basis of their different races and/or because Defendants Elliot, Norman, and Hancock had a rapport with inmate Garner. (*See* Doc. 5-1, at 111-12). Plaintiff complains that he received a conduct

7

violation on his record while inmate Garner did not.[2] Plaintiff further complains that inmate Garner was released from TPU before Plaintiff was. Plaintiff also complains that inmate Garner suffered no consequences for fabricating the PREA rape report. Plaintiff states that inmate Garner was not subjected to the "degrading and defaming" physical examination to which Plaintiff was subjected. Plaintiff also suggests Inmate Garner receives mental health treatment that Plaintiff does not, even though they have both been diagnosed with mental health disorders. (Doc. 5-1, at 115-16). Plaintiff also complains that he has never been provided with copies of the Rule 3.3 conduct report or the PREA rape report filed against him. Finally, as noted above, Plaintiff complains that PCI refuses to honor his Medicare health insurance and that Defendants are responsible for that.

Plaintiff's specific allegations against each Defendant are as follows:

Plaintiff accuses Officer Elliot of communicating with inmate Garner, despite a "nexis" that prohibited any communication between them, to persuade inmate Garner to file the PREA rape report against Plaintiff.

Plaintiff states that TPU Sgt. Hancock and RIB Chairman Lt. Norman conducted the RIB hearing finding Plaintiff guilty of the Rule 3.3 consensual-sex violation. Plaintiff hints that there were irregularities in the RIB hearing and/or appeal process. Plaintiff also states that Lt. Norman and Sgt. Hancock reviewed the "nexis" forbidding contact between Officer Elliot and inmate Garner and that they did nothing to address the

---

2   Plaintiff states in one of his exhibits that another inmate reported to Plaintiff that inmate Garner *was* found guilty of a Rule 3.3 violation. (Doc. 5-1, at 133).

violation. (Doc. 5-1, at 120).

Plaintiff accuses TPU Sgt. Hancock, RIB Chairman Lt. Norman, and Officer Elliot of conspiring with inmate Garner to persuade Garner to file the PREA rape report against Plaintiff. Plaintiff alleges that the conspiracy both was both racially motivated and factored into inmate Garner not being transferred to another institution.

Construed liberally, Plaintiff's Complaint also appears to suggest that Defendants Hancock, Norman, and Elliot's conspiracy against Plaintiff played a role in PCI's refusal to honor Plaintiff's Medicare benefits.

Finally, Plaintiff names the RIB as a Defendant. Construed liberally, and as noted above, Plaintiff's Complaint appears to suggest that there were irregularities in the RIB hearing and/or appeal process.

In relief, Plaintiff seeks:

(1.)  Not allow a False Prison Rape Allegation be used as an Institutional violation, or means to deny Release. (Remove from file completely.) Order that Pickaway Correctional Institution [accept] Medical Insurance and benefits as viable. Rule violation 3.3 be removed from file as Inmate Garner #825101 was allowed to Proceed with False Allegation.

(2.)  Not allow Penalty of not filing Health Insurance, be accrued to inmate, [due] to Pickaway Staff not honoring these benefits and Insurance.

(3.)  Order that according to Federal Law, I be allowed to seek Medical Attention From an authorized Medical Profession Doctor, that contracts with Medicare.

(4.)  Authorize the Removal of Conduct Report, stemming from Racial discrimination and coercion.

(5.)  Order by Judge's signature that this dishonoring of Federal Law,

Health Care Insurance Medicare Part-A and Part-B, Are honored with the Ohio Department of Rehabilitation & Correction. Including the Ohio Adult Parol Authority Hearing Release Review Panel. Denoting the Panel's not viable decision stemming from Pickaway Correctional Institution's Assessment of my Health Care Insurance.

(Doc. 5, at 106-07).

### III. Analysis

Based on the above allegations, the Undersigned understands Plaintiff to be raising, pursuant to 42 U.S.C. § 1983, an equal protection violation stemming from racial animus and/or unjustified disparate treatment with respect to (1) the Rule 3.3 violation, (2) the physical examination in connection with the PREA rape report, and (3) Plaintiff's access to mental health services; violations of ODRC and/or PCI rules in connection with the "nexis" prohibiting contact between Defendant Elliot and inmate Garner; a due process violation stemming from the promulgation of a false PREA rape report; a civil conspiracy claim; and denial of federal medical benefits.

At this stage of the proceedings, without the benefit of briefing, the Undersigned concludes that Plaintiff's claim alleging a denial of equal protection because he was discriminated against on the basis of his race, and/or treated differently than a similarly situated inmate (Garner), with respect to the Rule 3.3 violation can proceed to further development. The Court has not made a determination as to the merits of this claim or potential defenses thereto, nor is any defendant precluded from filing a motion to dismiss, motion for more definitive statement, or other appropriate motion under the Federal Rules of Civil Procedure. *See, e.g., Wiley v. Austin*, No. 8:20-cv-220, 2020 WL 6204382,

10

at \*3 (D. Neb. Oct. 22, 2010). But the Undersigned **RECOMMENDS** that the remaining claims be **dismissed**.

### 1. RIB Is Not a Proper Defendant

Plaintiff names the RIB as a Defendant. But the RIB is not a "person" capable of being sued under § 1983. Title 42 U.S.C. § 1983 provides that "[e]very *person* who, under the color of any statute … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured…." 42 U.S.C. § 1983 (emphasis added). For purposes of § 1983, the term "person" includes individuals and "bodies politic and corporate." *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (quoting inter alia, *Monell v. Dep't of Soc Servs.*, 436 U.S. 658, 690 & n. 55 (1978)). The RIB is not an entity with "a corporate or political existence," but merely an arm of the ODRC. *See Id*. And, in any event, "a prisoner has no constitutional right to be free from accusations of misconduct." *Ervin v. Crisler*, No. 2:19-cv-2986, 2019 WL 4345677, at \*3 (S.D. Ohio Sept. 12, 2019), *report and recommendation adopted*, No. 2:19-cv-2986, 2019 WL 5683397 (S.D. Ohio Nov. 1, 2019). It is accordingly **RECOMMENDED** that Plaintiff's claim against the RIB be **dismissed with prejudice**.

### 2. Violations of ODRC or Institution Rules Do Not State a Claim

Plaintiff's allegations that Defendants violated ODRC's and/or PCI's "nexis" rule (stemming from Defendant Elliot having contact with inmate Garner, and from Defendants Norman and Hancock failing to address it) fail to state a claim under § 1983.

11

Prisoners do not have federal statutory or constitutional right to enforce prison officials' compliance with prison policies. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). That is, § 1983 does not provide a remedy for violations of state laws or regulations. *Williams v. Burgess*, No. 5:21-cv-99 (TBR), 2021 WL 5816830, at *4 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007)). Since Defendants' alleged failure to comply with an ODRC and/or a PCI rule or policy does not rise to the level of a constitutional violation, Plaintiff's allegation should be dismissed for failure to state a claim.

### 3.  False Conduct Report Does Not State a Claim

Plaintiff alleges that inmate Garner was "coached" by Defendants Elliot, Norman, and Hancock to make a false PREA rape report against Plaintiff. Here, the Court addresses how this allegation targets the role Defendants Elliot, Norman, and Hancock played in the initiation of a false PREA rape report. Generally, an allegation of a false conduct report alone does not state a claim under 1983. *See, e.g., Johnson v. Osborne*, No. 1:21-cv-3, 2021 WL 2077908, at *3 (S.D. Ohio Apr. 27, 2021), *report and recommendation adopted*, No. 1:21-cv-3, 2021 WL 2093258 (S.D. Ohio May 24, 2021) ("Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right.") (citing *Reeves v. Mohr*, No. 4:11-cv-2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012). And to the extent that false accusations of misconduct *do* raise due process concerns, such charges do not constitute a deprivation of constitutional rights *if* the charges subsequently are

12

adjudicated in a _fair_ hearing. _See, e.g., Brown v. McCullick_, No. 18-2226, 2019 WL 5436159, at *4 (6th Cir. Apr. 23, 2019) (cleaned up). The "minimum due process requirements for such a disciplinary hearing are: (1) written notice of the charges before the hearing, (2) an opportunity to call witnesses and present evidence, and (3) a written statement of the evidence relied upon and reason for the action taken." _Roundtree v. Dunlap_, No. 3:18-cv-1198, 2019 WL 3252912, at *5, n.7 (N.D. Ohio July 19, 2019) (citing _Wolff v. McDonnell_, 418 U.S. 539 (1974)).

Plaintiff only hints, almost in passing, that there were irregularities at the RIB hearing and/or appeal from Assistant Warden Coffee's decision affirming the RIB verdict finding Plaintiff guilty of the Rule 3.3 violation. (Doc. 5-1, at 124). Plaintiff also complains that he has never been provided with copies of the Rule 3.3 conduct report or the PREA rape report filed against him. (_Id_. at 132-33). These cursory, unsupported statements _suggesting_, but not identifying or explaining, irregularities in the RIB hearing and/or appeals process do not satisfy the most basic pleading requirements that even _pro se_ litigants must comply with. That is, they fail entirely to put the Court or Defendants on notice as to what harm Plaintiff is alleging. _See Goff v. Chambers-Smith_, No. 1:21-cv-315, 2021 WL 2279808, at *5 (S.D. Ohio June 4, 2021) ("The liberal construction afforded _pro se_ pleadings does not require courts to conjure unpled allegations for _pro se_ plaintiffs or to 'guess at the nature' of their claims.") (citing _Wells v. Brown_, 891 F.2d 591, 594 (6th Cir. 1989)). To the extent that Plaintiff raises a due process claim against Defendants for their role in inmate Garner's initiation of a false PREA rape report, it is

**RECOMMENDED** that the allegation should be **dismissed** for failure to state a claim.

### 4. Physical Examination Disparate Treatment Does Not State a Claim

Plaintiff complains that although he and inmate Garner were both charged with a Rule 3.3 consensual-sex violation, Plaintiff was subjected to an invasive and degrading physical examination, but inmate Garner was not. (Doc. 5, at 105). Generally, "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff*, 418 U.S. at 556 (cleaned up). Stating an equal protection claim under this theory requires a prisoner to allege sufficient plausible facts to show "that a state actor intentionally discriminated against [him] because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (cleaned up), *abrogated in part on other grounds by King v. Harwood*, 853 F.3d 568, 580 n.4 (6th Cir. 2017); *see also Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000). Alternatively, a plaintiff can state a "class-of-one" equal protection claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Franks v. Rubitschun*, 312 F. App'x 764, 766 (6th Cir. 2009) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)); *see also Ervin v. Davis*, No. 2:16-cv-186, 2017 WL 2573251, at *4 (S.D. Ohio June 14, 2017).

These allegations fail to state an equal protection claim because a rational basis existed for the disparate treatment and because it does not appear that any named Defendants were personally involved in the alleged misconduct. First, Plaintiff does not

14

allege, and it is not otherwise plausible, that the physical examination that Plaintiff underwent was racially motivated. And under the class-of-one theory, he still fails to state a claim because a rational basis existed for difference in treatment. It appears from Plaintiff's own allegations that the physical examination to which he was subjected stemmed not from an investigation of the Rule 3.3 consensual-sex violation, but because inmate Garner had filed a PREA rape report. And at the time that Plaintiff was questioned and then examined, prison authorities were in the early phase of investigating the veracity of the report. Thus, Plaintiff does not plausibly allege that he was intentionally treated differently from inmate Garner with no rational basis.

Beyond the foregoing, it does not appear that any named Defendants were personally involved in the alleged misconduct. To state a claim against a defendant in his or her individual capacity, a plaintiff must allege personal involvement by the defendant in causing Plaintiff's injury. *Hardin v. Straub*, 954 F.2d 1193, 1196-98 (6th Cir. 1992). A party cannot be held liable under § 1983 unless the party personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) ("There is no claim in this case that the Sheriff directly participated in or encouraged the alleged deprivations of Leach."). "A plaintiff, even one proceeding *pro se*, must plead sufficient facts to show how each defendant allegedly violated plaintiff's rights." *Johnson v. Chambers-Smith*, No. 2:22-cv-4179, 2023 WL 2555446, at *18 (S.D. Ohio Mar. 17, 2023) (citations omitted), *report and recommendation adopted Johnson v.*

15

*Chambers-Smith*, No. 2:22-cv-4179, 2023 WL 6065130 (S.D. Ohio Sep. 18, 2023). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corrs. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citation omitted). *See, also, Marshall v. Westcomb*, No. 2:25-cv-144, 2025 WL 2166304, at *6 (W.D. Mich. July 31, 2025) ("Furthermore, any '[s]ummary reference to a single, five-headed "Defendants" does not support a reasonable inference that each Defendant is liable…." *Boxill [v. O'Grady]*, 935 F.3d [510,] 518 [(6th Cir. 2019)] (citation omitted)). Plaintiff does not plausibly allege that any of the named Defendants were involved in the investigation—including the physical examination—of the PREA rape report. Any allegation that Plaintiff was denied equal protection stemming from the physical examination he was subjected to should be **DENIED** for failure to state a claim.

**5. Mental Health Services Disparate Treatment Does Not State a Claim**

To the extent that Plaintiff alleges an equal protection violation because inmate Garner receives mental health services that Plaintiff does not (Doc. 5-1, at 115-16), he fails to state a claim. First, he does not allege that any of the named Defendants were personally involved in that alleged misconduct—nor is it plausible that these named Defendants were in any position to grant or deny access to mental health services. Additionally, this claim does not relate to Plaintiff's core allegations against Defendants in connection with how Plaintiff and inmate Garner were treated vis-à-vis the Rule 3.3 violation. A plaintiff may not join unrelated claims unless the claims arise "out of the

16

same transaction, occurrence, or series of transactions or occurrences; and … any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); *see also White v. ODRC Dir.*, No. 1:24-cv-270, 2024 WL 5096095, at *5-6 (S.D. Ohio Nov. 4, 2024), *report and recommendation adopted*, No. 1:24-cv-270, 2024 WL 5090692 (S.D. Ohio Dec. 12, 2024). Any allegation that Plaintiff was denied equal protection stemming from disparate treatment between Plaintiff's and inmate Garner's access to mental health services should be **DENIED** for failure to state a claim.

### 6. Conspiracy Allegations Do Not State a Claim

Plaintiff has not pleaded sufficient allegations accusing Defendants of a conspiracy with inmate Garner, possibly racially motivated, against Plaintiff, vis-à-vis inmate Garner's filing of a PREA rape report against Plaintiff. "A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Crowley v. Anderson Cnty. Tenn.*, 783 F. App'x 556, 560 (6th Cir. 2019) (cleaned up).

> To prevail on a civil conspiracy claim, [a plaintiff] must show that (1) a "single plan" existed, (2) [the defendant] "shared the general conspiratorial objective" to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused the injury" to [the plaintiff].

*Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (cleaned up). In the Sixth Circuit, "conspiracy claims must be pled with some degree of specificity and [] vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (cleaned

17

up).

Plaintiff alleges that inmate Garner was "coached" by Defendants Elliot, Norman, and Hancock to make a false PREA rape report against Plaintiff. But Plaintiff provides no plausible allegations of any agreement between the Defendants. Plaintiff alleges that Defendant Elliot had contact with inmate Garner shortly after Garner and Plaintiff were sent to TPU. Plaintiff does not allege any direct contacts by Defendants Norman or Hancock with either inmate Garner or Defendant Elliot. Under controlling law, this "hint" at the "possibility" of a conspiracy is insufficient to state a claim. *Twombly*, 550 U.S. at 556. The Undersigned **RECOMMENDS** that Plaintiff's civil conspiracy claim against Defendants be **DENIED** for failure to state a claim.

### 7.  Denial of Medicare Benefits Does Not State a Claim

Plaintiff complains that PCI refuses to honor his access to Medicare benefits. He implies that Defendants Elliot, Norman, and Hancock Plaintiff have played a role in the denial of Medicare benefits. Plaintiff ostensibly links this complaint to his allegations concerning inmate Garner and the Defendants because he was not permitted to select a Medicare-contracted physician of his choice to conduct the physical examination occasioned by the PREA rape report investigation. Plaintiff's allegations fail to state a claim upon which relief can be granted.

First, the denial of Medicare benefits does not implicate a constitutional right enforceable in a § 1983 action. *Cf. Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357, 382 (2025) (noting that no court has addressed whether a Medicare beneficiary

18

can enforce right to benefits under § 1983). Beyond that, Plaintiff makes no allegations from which the Court could plausibly infer that the named Defendants in this action were personally responsible for any alleged denial of Medicare benefits. As noted above, a party cannot be held liable under § 1983 unless the party personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *Leach*, 891 F.2d at 1246. It is **RECOMMENDED** that Plaintiff's complaint about the denial of Medicare benefits **be dismissed** for failure to state a claim.

## IV. CONCLUSION

The Undersigned has screened the Complaint (Doc. 5) as required under 28 U.S.C. §§ 1915 and 1915A and finds that Plaintiff's equal protection claim, stemming from the disparate treatment he and inmate Garner received vis-à-vis the Rule 3.3 violation with which they were both charged, can **PROCEED** against Defendants Elliot, Norman, and Hancock.

It is **RECOMMENDED** that Plaintiff's claim against the RIB be **dismissed with prejudice** and that Plaintiff's remaining claims against the Defendants be **dismissed without prejudice**.

The next step in this case is for Defendants Elliot, Norman, and Hancock to be served with the Summons and Complaint, and then for the Defendant(s) to file a response to the Complaint. Plaintiff included multiple service forms addressed to "Sgt. Hancock, et al." (Doc. 1-4). That is insufficient to effectuate service on anyone but Defendant

Hancock. Plaintiff must provide one set of forms (a Summons form and a U.S. Marshal form) for each Defendant. Plaintiff is **ORDERED** to complete and return a Summons form and a U.S. Marshal form for Defendant Elliot and Defendant Norman. The Court will provide the blank forms for him to use.

Once the completed forms are received by the Clerk, the Court **DIRECTS** the United States Marshal Service to serve a copy of the Summons, the Complaint (Doc. 5) and this Order on Defendants Hancock, Elliot, and Norman as directed by Plaintiff. The costs of service shall be advanced by the United States. *See* 28 U.S.C. § 1915(d).

During these proceedings, Plaintiff shall serve upon each Defendant or, if appearance has been entered by counsel, upon each Defendant's attorney, a copy of every further pleading or other document submitted for consideration by the Court. He shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of the document was mailed to the Defendant(s) or Defendant(s)' counsel. Any paper received by a District Judge or Magistrate Judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

The Clerk is **DIRECTED** to send to Plaintiff, along with this Order, two blank summons forms and two blank U.S. Marshal forms.

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written

objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of these objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). *See also Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    **IT IS SO ORDERED AND RECOMMENDED.**

June 24, 2026                                     *s/Stephanie K. Bowman*
                                               STEPHANIE K. BOWMAN
                                               Chief United States Magistrate Judge